UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
MAR 27 2025
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____CL_____
DEPUTY

Michael Ammann,
Plaintiff,

v.

eXp World Holdings, Inc.,
eXp Realty, LLC,
Glenn Sanford,
Leo Pareja,
Patrick O'Neill,
James Bramble,
Karla Sanders,
Sarah Ford, and
Megan Featherston,
Defendants.

Case No.: 1:25CV00468 DAE

PLAINTIFF'S ORIGINAL COMPLAINT
(Breach of Fiduciary Duty, Negligent Misrepresentation, Negligence)

COMES NOW, Plaintiff Michael Ammann, appearing pro se, and files this Original Complaint against Defendants eXp World Holdings, Inc. ("eXp World"), eXp Realty, LLC ("eXp Realty"), Glenn Sanford, Leo Pareja, Patrick O'Neill, James Bramble, Karla Sanders, Sarah Ford, and Megan Featherston (collectively, "Defendants"), alleging as follows:

I. JURISDICTION AND VENUE
1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Plaintiff is a citizen of Texas. Defendants eXp World and eXp Realty are Delaware entities with principal places of business outside Texas, and the individual Defendants reside outside Texas. The amount in controversy exceeds $75,000, exclusive of interest and costs.
2. Venue is proper in the Western District of Texas, Austin Division, under 28 U.S.C. § 1391(b)(3), because Plaintiff resides in Austin, Texas, and Defendants are subject to personal jurisdiction in this district.

II. PARTIES
3. Plaintiff Michael Ammann is an individual residing in Austin, Texas.
4. Defendant eXp World Holdings, Inc. is a Delaware corporation with its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226, operating through its subsidiary, eXp Realty.

5. Defendant eXp Realty, LLC is a Delaware limited liability company with its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226, responsible for managing real estate agents, including Defendant Megan Featherston.

6. Individual Defendants:

   a. Glenn Sanford: Chairman and CEO of eXp World, residing outside Texas, responsible for corporate oversight and policies.

   b. Leo Pareja: CEO of eXp Realty, residing outside Texas, tasked with managing agent operations and compliance.

   c. Patrick O'Neill: COO of eXp Realty, residing outside Texas, involved in operational oversight.

   d. James Bramble: General Counsel of eXp World, residing outside Texas, responsible for legal compliance and risk management.

   e. Karla Sanders: Agent Compliance Officer of eXp Realty, residing outside Texas, involved in agent supervision.

   f. Sarah Ford: Managing Broker of Ohio for eXp Realty, residing outside Texas, involved in agent training and oversight.

   g. Megan Featherston: A real estate agent with eXp Realty, residing outside Texas, who acted as Plaintiff's buyer's agent in the transactions at issue.

## III. FACTUAL ALLEGATIONS

7. All acts by Defendant Featherston were undertaken within the course and scope of her employment or agency relationship with Defendants eXp Realty and eXp World Holdings, Inc., and those entities are vicariously liable for her conduct.

8. Defendant Featherston acted as Plaintiff's exclusive buyer's agent for the purpose of acquiring properties in the Cleveland, Ohio area. At all times, Plaintiff reasonably relied on Featherston's duties of loyalty, transparency, and diligence, and on the supervisory structure of eXp Realty and its parent entities.

9. Defendant Featherston acted as Plaintiff's buyer's agent on 2211 Jackson Blvd, University Heights, OH 44118 ("Property A") and 3561 Raymont Blvd, University Heights, OH 44118 ("Property B"). Plaintiff reasonably relied on Featherston's expertise and the supervision provided by eXp Realty and its affiliates.

10. Property A (2211 Jackson Blvd) Timeline:

   a. On February 29, 2024, Plaintiff indicated to Featherston his interest in buying Property A and requested the Point of Sale report (POS) (Exhibit A—Text Message). Plaintiff added Property A to the Acquisition Sheet shared with Featherston (Exhibit B—Acquisition Sheet).

   b. On March 1, 2024, Plaintiff followed up with Featherston via text (Exhibit C—Text Message); Featherston's associate, Courtney, responded that no POS was available yet (Exhibit D—Text Message).

   c. On March 2, 2024, Plaintiff entered an offer for Property A in the Acquisition Sheet for Featherston to submit (Exhibit B—Acquisition Sheet).

   d. On March 9, 2024, Featherston did not submit Plaintiff's offer and instead submitted an offer for a competing buyer, Zhang, without disclosing this to Plaintiff (Exhibit E—Offer Document).

   e. On March 13, 2024, Featherston knowingly misrepresented that a "team member" had Property A under contract, when in fact she had submitted an offer for her own buyer, thereby

concealing a clear conflict of interest and acting in bad faith (Exhibit F—Email). On a call that day, Featherston admitted to Plaintiff she lied and had it under contract herself with another buyer.
   f. On March 21, 2024, Featherston submitted an offer to buy Property A herself for $110,000, a significant discount to Zhang's offer, knowing Plaintiff's interest and without informing him, coinciding with Zhang signing a release (Exhibit H—Offer Document).

11. Property B (3561 Raymont Blvd) Timeline:
   a. On March 7, 2024, Plaintiff indicated to Featherston his interest in buying Property B and requested the Point of Sale report (POS) (Exhibit I—Text Message). Courtney sent the POS that day. Plaintiff added Property B to the shared Acquisition Sheet (Exhibit K—Acquisition Sheet) and asked Featherston to provide the POS escrow estimate number (Exhibit L—Text Message).
   b. On March 8, 2024, Plaintiff texted Featherston, "Please provide escrow estimate and we can submit an offer," but Featherston did not respond or provide an estimate (Exhibit M—Text Message).
   c. On March 9, 2024, Featherston submitted an offer for a competing buyer, Zhang, without disclosing this to Plaintiff (Exhibit N—Offer Document).
   d. On March 13, 2024, Featherston knowingly misrepresented that a "team member" had Property A under contract, when in fact she had submitted an offer for her own buyer, thereby concealing a clear conflict of interest and acting in bad faith (Exhibit F—Email). On a call that day, Featherston admitted to Plaintiff she lied and had it under contract herself with another buyer.
12. Defendants eXp World, eXp Realty, Sanford, Pareja, O'Neill, Bramble, Sanders, and Ford operated a low-cost business model that intentionally licensed tens of thousands of agents, including Featherston, with minimal to no supervision or training, trying to maximize profits and minimize costs, consciously disregarding the extreme risk of harm to the public and enabling her breaches of duty, as evidenced by her wrongful acts against Plaintiff detailed in paragraphs 10 and 11.
13. As a result, Plaintiff suffered damages, including lost profits of $102,500 for Property A (purchased for $110,000, rehabbed for $80,000, sold for $292,500) and $89,000 for Property B (purchased for $165,000, rehabbed for $80,000, sold for $334,000), and lost investment opportunity profits of over $250,000 from the inability to redeploy this capital into similar properties, totaling damages in excess of $450,000.

IV. CAUSES OF ACTION
Count 1: Breach of Fiduciary Duty (Against All Defendants)
14. Featherston, as Plaintiff's buyer's agent, owed Plaintiff fiduciary duties of loyalty, care, disclosure, and obedience under common law and real estate professional standards. eXp World and eXp Realty are vicariously liable for Featherston's acts within the scope of her employment.
15. Featherston breached these duties by acquiring Property A for herself and diverting Property B to another investor, acts contrary to Plaintiff's interests, as detailed in paragraphs 10 and 11.
16. The remaining Defendants contributed to this breach by failing to supervise or correct Featherston's misconduct, breaching their own duties to ensure agent compliance.
17. As a direct and proximate result, Plaintiff suffered substantial financial harm.

Count 2: Negligent Misrepresentation (Against Featherston, eXp World, and eXp Realty)

18. Featherston, in her professional capacity as Plaintiff's buyer's agent, represented to Plaintiff that she would secure properties and act on Plaintiff's behalf, statements made in the course of real estate transactions.
19. These representations were false, as Featherston failed to act in Plaintiff's interest, instead acquiring Property A for herself and diverting Property B to another investor, without exercising reasonable care or competence in communicating her intentions or capabilities.
20. Featherston intended Plaintiff to rely on these representations, and Plaintiff justifiably relied on them to Plaintiff's detriment. eXp World and eXp Realty are vicariously liable for Featherston's misrepresentations within the scope of her employment and failed to ensure her professional competence.
21. As a direct and proximate result, Plaintiff suffered the loss of Properties A and B and resulting financial damages and lost investment opportunity profits.

Count 3: Negligence (Against eXp World, eXp Realty, Sanford, Pareja, O'Neill, Bramble, Sanders, and Ford)
22. Defendants owed Plaintiff a duty to exercise reasonable care in training, supervising, and monitoring their agents, including Featherston, to ensure compliance with professional standards in real estate services.
23. Defendants breached this duty by failing to oversee Featherston's actions, constituting negligence, with eXp World and eXp Realty vicariously liable for her conduct within the scope of her employment, as detailed in paragraphs 10 and 11.
24. Plaintiff's damages were proximately caused by this negligence.

Count 4: Gross Negligence (Against eXp World, eXp Realty, Sanford, Pareja, O'Neill, Bramble, Sanders, and Ford)
25. Defendants knowingly operated a low-cost business model that prioritized rapid agent onboarding and minimal compliance, creating an environment that predictably enabled unethical conduct, as evidenced by Featherston's actions in paragraphs 10 and 11.
26. Their failure to provide meaningful oversight or enforce ethical safeguards constitutes willful indifference to the extreme and foreseeable risk of harm to the public, including Plaintiff.
27. By maintaining this grossly negligent system, Defendants directly enabled Featherston's misconduct, proximately causing Plaintiff's financial harm in excess of $450,000 and warranting punitive damages.

V. DAMAGES
28. Plaintiff seeks:
    a. Compensatory Damages: Not less than $450,000, including:
       i. $191,500 in lost profits ($102,500 for Property A and $89,000 for Property B);
       ii. $250,000 in lost investment opportunity profits from the inability to redeploy capital into new properties;
    b. Punitive Damages: Not less than $500,000 for Defendants' gross negligence, including eXp World Holdings, Inc. and eXp Realty, LLC's intentional operation of a low-cost model that licenses tens of thousands of agents without adequate supervision, consciously disregarding the extreme risk of harm to the public, as evidenced by Defendant Featherston's wrongful acts against Plaintiff detailed in paragraphs 10 and 11.
    c. Interest: Pre- and post-judgment interest at the maximum legal rate.

d. Costs: All court and litigation costs.
e. Such other relief as the Court deems just and proper.

## VI. INSURANCE COVERAGE ALLEGATIONS

29. The acts and omissions alleged herein were committed within the course and scope of Defendants' employment and business operations as real estate professionals.
30. On information and belief, Starr Surplus Lines Insurance Company provides professional liability coverage to Defendants for acts or omissions arising out of their conduct as licensed real estate professionals, including coverage for breaches of fiduciary duty and negligence.
31. Plaintiff reserves the right to assert a claim against any insurer, including Starr Surplus Lines Insurance Company or its successor, for indemnification of any judgment or settlement entered against the Defendants pursuant to the applicable insurance policies.

## VII. DEMAND FOR JURY TRIAL

32. Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:
a. Enter judgment against Defendants, jointly and severally, for all damages, including compensatory damages, punitive damages, pre- and post-judgment interest, and costs;
b. Declare that the insurance policies maintained by Defendants, including policy by Starr Surplus Lines Insurance Company, provide coverage for the claims asserted herein;
c. Grant such further relief as the Court deems just and proper.

DATED: March 24, 2025

Respectfully submitted,

/s/ Michael Ammann
Michael Ammann
1008 Willie Ranch Way
Leander, TX 78641
845-721-1512
Michael.p.ammann@gmail.com
Plaintiff, Pro Se