# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL AMMANN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No.  1:25-cv-00468-DAE** |
| | § | |
| **EXP WORLD HOLDINGS, INC.,** | § | |
| **ET AL.,** | § | |
| *Defendants* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE DAVID A. EZRA
       SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are the referred motions in this case. Dkts. 19; 20; 21; 23; 24; 26; 27; 28; 32. After reviewing the motions and all related briefing, the undersigned denies docket entries 23, 26, 27, and 32 and recommends that the District Judge enter an order on the remaining motions in accordance with the discussion below.

## I.    BACKGROUND

Plaintiff Michael Ammann sues Defendants eXp World Holdings, Inc., eXp Realty, LLC, Glenn Sanford, Leo Pareja, James Bramble, Karla Sanders, Sarah Ford, and Megan Featherston (collectively, "Defendants")[1] for breach of fiduciary duty and other causes of action in connection with a failed real estate transaction. Ammann

---

[1] Ammann voluntarily dismissed his claims against Defendant Patrick O'Neill. Dkt. 35. O'Neill has not yet filed an answer or motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (permitting plaintiff to dismiss an action without a court order by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment").

attempted to purchase two properties in Ohio, Property A and Property B. Dkt. 1, at 2, 3. Featherston represented Ammann as his buyer's agent in both transactions. *Id.* at 2. Ammann alleges that when he asked Featherston to submit an offer on his behalf for Property A, Featherston "instead submitted an offer for a competing buyer." *Id.* at 2. Later, Featherston allegedly submitted an offer to buy Property A herself, undercutting both Ammann's and the competing buyer's bid. *Id.* at 3. Ammann further alleges that when he asked Featherston to submit an offer on his behalf for Property B, Featherston again submitted an offer for the competing buyer. *Id.*

Based on this conduct and related alleged misrepresentations, Ammann sued Featherston, the real-estate company she works for, eXp Realty, LLC ("eXp Realty"), and its parent company, eXp World Holdings, Inc. ("eXp World"). *Id.* at 1-2. Ammann also sued various individual defendants associated with the eXp companies as executives or managers: Glenn Sanford, Leo Pareja, James Bramble, Karla Sanders, and Sarah Ford. *Id.* at 2. Ammann sues all defendants for breach of fiduciary duty. *Id.* at 3. He also brings claims for negligent misrepresentation against Featherston, eXp World, and eXp Realty; negligence against eXp World, eXp Realty, Sanford, Pareja, Bramble, Sanders, and Ford; and gross negligence against eXp World, eXp Realty, Sanford, Pareja, Bramble, Sanders, and Ford. *Id.* at 3-4.

Summons were returned executed as to seven of the eight defendants, excluding Featherston. Dkts. 5; 6; 7; 8; 11; 12; 13. When each of those seven defendants failed to answer or otherwise respond on time, Ammann moved for, and

2

the clerk entered, their default. Dkts. 9; 14; 15; 16; 17; 18. Ammann moved for default judgment as to those seven defendants. Dkt. 19.

Soon afterward, defendants Bramble, Featherston, Ford, Pareja, Sanders, and Sanford filed a motion to dismiss for lack of personal jurisdiction. Dkt. 20. Featherston had still not been served. The next day, Bramble, Featherston, Ford, Pareja, Sanders, and Sanford, along with eXp World and eXp Realty, filed another motion to dismiss, asking this Court to set aside the entry of default against them and dismiss this case for insufficient service of process. Dkt. 21. In their motion, Dkt. 21, Defendants allege that Ammann served them only with a summons, leaving out a copy of the complaint as required by Federal Rule of Civil Procedure 4(c)(1). *Id.* at 5; Fed. R. Civ. P. 4(c)(1) (requiring that a summons be served with a copy of the complaint).[2] Ammann also moved to supplement his motion for default judgment. Dkt. 24.

Finally, Ammann filed a motion for leave to file a sur-reply in opposition to Defendants' motions to dismiss, Dkt. 26, a motion to strike certain evidence attached to Defendants' reply in support of their motion to dismiss and motion to set aside the entry of default, Dkt. 27, a motion to strike Defendants' response in opposition to

---

[2] Ammann moved to strike the motion to dismiss, Dkt. 21, on the grounds that it violates Federal Rule of Civil Procedure 12(g)(2), which generally provides that a party making a motion under Rule 12 "must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Dkt. 23; Fed. R. Civ. P. 12(g)(2). However, because Ammann responded to the motion to dismiss before filing his motion to strike, the undersigned denies the motion. *See* Dkt. 22 (response in opposition to the motions to dismiss); Fed. R. Civ. P. 12(f) (providing that the court may strike material from a pleading on its own or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading").

Ammann's motion to file a sur-reply, Dkt. 32, and a motion for sanctions against Defendants' counsel. Dkt. 28.

## II.    SUBJECT-MATTER JURISDICTION

The Court must determine whether it has subject-matter jurisdiction over the case before taking up the motions. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005). The undersigned finds that the Court may exercise subject-matter jurisdiction over Ammann's suit.

### A.    Background

In his complaint, Ammann stated that the Court could exercise subject-matter jurisdiction based on diversity. Dkt. 1, at 1. Ammann alleged that he is a "citizen" of Texas, that Defendants eXp World and eXp Realty are "Delaware entities with principal places of business outside Texas," and that "the individual Defendants reside outside Texas." Dkt. 1, at 1. He also stated that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. *Id.* In a motion to dismiss, Defendants Sanford, Pareja, Bramble, Sanders, Ford, and Featherston stated that "Ammann *and O'Neill* are … Texas residents," referring to Defendant O'Neill. Dkt. 20, at 7; *see also* Dkt. 25-2, at 4 (attesting that O'Neill is a "resident" of Texas).

The undersigned ordered supplemental briefing on subject-matter jurisdiction, instructing Ammann to file a brief identifying the citizenship or domicile of each defendant, whether there was complete diversity when Ammann filed his initial

4

complaint, and any other issues germane to whether the Court has subject-matter jurisdiction over the case. Dkt. 34. The undersigned also ordered Defendants to respond to Ammann's brief. *Id.* In his supplemental brief filed on June 14, 2025, Ammann stated that he is a citizen of Texas, complete diversity existed at the time the complaint was filed, that he voluntarily dismissed his claims against O'Neill, and that "[n]one of the remaining defendants are domiciled in Texas." Dkt. 35, at 1-2. Defendants responded that Ammann pleaded insufficient facts to properly allege the citizenship of eXp Realty, LLC, and that Ammann is not domiciled in Texas. Dkt. 39, at 4-6. Defendants pointed out that Ammann "continually represented" in lawsuits in Ohio and Florida "that he is a resident of Florida." *Id.* at 5. Defendants attached a copy of Ammann's amended complaint in a related lawsuit in the Southern District of Florida—filed in June 2025—in which Ammann stated that he was domiciled in Florida "at the time the action was filed and during the events giving rise to the claims," which also involve Ammann's agent-client relationship with Featherston.[3] Dkt. 39-5, at 3.

After evaluating the supplemental briefing, the undersigned remained unable to determine whether the Court could exercise subject-matter jurisdiction over this case. The undersigned ordered a second round of supplemental briefing, instructing Ammann to file an affidavit disclosing the state in which he resides, the state in which he intends to remain, and any other evidence in his possession pertinent to the issue

---

[3] In the Florida case, Ammann sues eXp World, eXp Realty, Sanford, Pareja, O'Neill, and Bramble for "knowingly allow[ing] agent Megan Featherston to violate [company polices relating to ethics] by acting as both a contractor and an agent on properties represented for Plaintiff." Dkt. 39-5, at 2.

of the Court's subject-matter jurisdiction. Dkt. 42, at 4. The undersigned ordered Defendants to file an affidavit disclosing the name of each member of eXp Realty, LLC, the citizenship of each member, and any other evidence in their possession pertinent to subject-matter jurisdiction. *Id.*

Ammann filed an affidavit in which he attested that he resides in the state of Texas and intends to remain there. Dkt. 43-1, at 1. He also attached copies of a utility bill and a phone bill from February 2025, which were sent to him at a Leander, Texas address. Dkts. 43-2; 43-3; 43-4. Defendants filed an affidavit demonstrating that eXp Realty, LLC is a citizen of Washington. Dkts. 44, at 1-2; 44-1, at 2-3. But Defendants argued in their briefing that given Ammann's representations in the Florida case, Ammann has not met his burden to establish that the Court has subject-matter jurisdiction over his suit. Finally, in his reply to Defendants' supplemental briefing, Ammann stated that he "was domiciled in Florida when the other cases were filed," indicating that he moved to Texas before filing this suit. Dkt. 45, at 1.

## B.    Legal Standards

Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are "duty-bound to examine the basis of subject matter jurisdiction at all stages of the proceedings and dismiss if jurisdiction is lacking." *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024) (internal quotation marks omitted). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or

constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The party invoking federal jurisdiction carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Sentry Ins. v. Morgan*, 101 F.4th 396, 398 (5th Cir. 2024). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). A court can find that subject-matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Miss. River Transp. v. Nadel & Gussman, LLC*, 844 F.3d 495, 497 (5th Cir. 2016) (internal quotation marks omitted); *see also Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). However, at the pleading stage, the party invoking federal jurisdiction must only "'allege a plausible set of facts establishing jurisdiction.'" *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 271 (5th Cir. 2021) (citing *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)).

## C.    Discussion

Congress has granted district courts jurisdiction over (1) federal question cases—suits "arising under" federal law, and (2) diversity cases—suits between citizens of different states as to any matter valued at more than $75,000. 28 U.S.C. §§ 1331, 1332. To properly allege diversity jurisdiction, a party must allege "complete diversity," or that "all persons on one side of the controversy [are] citizens of different

states than all persons on the other side." *SXSW, LLC v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (cleaned up). "For diversity jurisdiction, [courts] look to citizenship at the time the complaint was filed." *Id.* at 408.

The lack of clarity as to Ammann's domicile stems from his representations in a related lawsuit. On December 20, 2024, Ammann sued eXp World, eXp Realty, Sanford, Pareja, O'Neill, and Bramble in the Southern District of Florida for fraudulent and tortious conduct relating to their oversight of Featherston. Dkt. 39-5. In his complaint, Ammann stated that he was a "resident of Miami, Florida." *Id.* at 2. On June 23, 2025, after the undersigned ordered Ammann to submit supplemental briefing as to his domicile, Ammann amended his complaint in the Florida suit. *See* Dkts. 34; 39-6. As amended, the complaint stated that Ammann was "domiciled in Florida at the time this action was filed and during the events giving rise to the claims." Dkt. 39-6, at 2. Ammann also dropped Pareja—who, Ammann states in his supplemental briefing, is a Florida citizen—from the Florida amended complaint, suggesting that Ammann voluntarily dismissed his claims against Pareja in the Florida suit. *See* Dkts. 39-5, at 2 (naming Pareja as a defendant in the Florida suit); 39-6, at 1, 2 (omitting Pareja in the amended complaint in the Florida suit); 35, at 2 (alleging in supplemental briefing that Pareja is a citizen of Florida). Defendants suggest that despite his allegations in this suit, Ammann is actually a citizen of Florida. *See, e.g.*, Dkt. 44, at 2-3. If both Ammann and Pareja were citizens of Florida, the Court could not exercise subject-matter jurisdiction over this case.

The undersigned agrees that Ammann's statements and representations regarding subject-matter jurisdiction are muddled. It is suspect that, during the pendency of these proceedings, Ammann continued to sign pleadings in the Florida case using a Miami address. Dkt. 44-2, at 8. Though not determinative of domicile, the use of a Florida address to receive important legal mail suggests that Ammann may not reside in Texas. Further, as recently as July 22, 2025, Ammann represented to the Florida court that it could exercise subject-matter jurisdiction over a suit involving Ammann and O'Neill, who Ammann alleges is a Texas citizen in the Florida suit. *See* Dkts. 44-2, at 3; 44-3, at 4. Finally, the fact that Ammann has filed this largely duplicitous lawsuit in multiple courts[4] suggests that he may be attempting to game the system.

Despite these shortcomings, the undersigned finds that Ammann has alleged a plausible set of facts establishing jurisdiction. *See Laufer*, 996 F.3d at 271. Ammann filed the instant suit on March 27, 2025. Dkt. 1. In his complaint, Ammann states that he is a citizen of Texas. *Id.* at 1. In his first supplemental brief, Ammann again states that he is a citizen of Texas. Dkt. 35, at 1. And in his second supplemental brief, Ammann stated that he resides in and intends to remain in Texas. Dkt. 43, at 1. Ammann's December 2024 statement that he "resides in Miami" and his June 2025 statement that he was "domiciled in Florida at the time this action was filed and during the events giving rise to the claims" are not necessarily inconsistent with his

---

[4] Defendants allege that Ammann also sued in an Ohio state court. Dkt. 20, at 2. Defendants also state that Ammann has filed a fourth lawsuit arising out of the same events. Dkt. 37, at 12.

representations in this lawsuit that he is a citizen of Texas. *See* Dkts. 39-5, at 2; 39-6, at 2. For example, it is possible that between filing the Florida suit and this one, Ammann moved to Texas, where he now intends to stay. It is also possible that Ammann was domiciled in Florida at the time he filed the Florida suit and during the events giving rise to the claims in that suit. But because citizenship for diversity purposes is assessed at the time of filing, it is sufficient for Ammann to show that he was domiciled in Texas at the time he filed this suit. *See SXSW*, 83 F.4th at 408 (stating that for diversity jurisdiction, courts look to citizenship at the time the complaint was filed). Therefore, Ammann has alleged a plausible set of facts establishing jurisdiction. *See Laufer*, 996 F.3d at 271.

The undersigned therefore concludes that the Court may exercise subject-matter jurisdiction over this case. As stated above, the Court is under a continuing obligation to assess subject-matter jurisdiction. *See Reule*, 114 F.4th at 365. The undersigned cautions Ammann that pursuant to Federal Rule of Civil Procedure 11, he may be sanctioned if the Court determines that he has violated his obligation to be truthful in his representations to the Court.

### III.    MOTION TO SET ASIDE ENTRY OF DEFAULT

Having determined that the Court may exercise subject-matter jurisdiction over this case, the undersigned addresses the motion to set aside the entry of default, Dkt. 21. As previously stated, summonses were returned executed as to eXp World, eXp Realty, Sanford, Pareja, Bramble, Sanders, and Ford. Dkts. 5; 6; 7; 8; 11; 12; 13. When each of those defendants failed to answer or otherwise respond on time,

Ammann moved for, and the clerk entered, their default. Dkts. 9; 14; 15; 16; 17; 18. Defendants now move to set aside the clerk's entry of default against them. Dkt. 21.

### A.    Legal Standard

Under Rule 55, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed. R. Civ. P. 55. After the clerk of court enters a defendant's default, the plaintiff may apply for a judgment based on such default. *Id.* However, a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The entry of a default judgment is therefore committed to the sound discretion of the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). Indeed, default judgments are "generally disfavored." *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984).

Pursuant to Rule 55, "a district court 'may set aside an entry of default for good cause.'" *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 698 (5th Cir. 2015) (quoting Fed. R. Civ. P. 55(c)). "The language of this rule is discretionary[.]" *Id.* In exercising its discretion to determine whether good cause has been shown, a district court generally examines three factors: "(1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). As "[t]hese factors are not exclusive,"

"[o]ther factors may be considered, such as whether the party acted expeditiously to correct the default." *Id.* "[W]here there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (internal citations omitted).

### B.    Discussion

There is good cause to set aside the entry of default here. *See Moreno*, 800 F.3d at 698 (setting out the good cause standard). First, there is no evidence that Defendants' failure to answer was willful. *See Effjohn*, 346 F.3d at 563. "A willful default is an intentional failure to respond to litigation." *Scott v. Carpanzano*, 556 F. App'x 288, 294 (5th Cir. 2014) (internal quotations omitted). Examples of willfulness include refusing to appear and instructing other attorneys not to enter an appearance. *Id.* There is no evidence that Defendants made any such conscious choice in this case.

Defendants' prompt response to the entry of default also suggests that their failure to answer was not willful. *See Effjohn*, 346 F.3d at 563 (holding that courts may consider factors such as whether the party "acted expeditiously to correct the default" in determining whether to set it aside). Defendants moved to set aside the entry of default two weeks after its entry in the earliest instance. *See* Dkts. 15 (entry of default as to Bramble, Ford, Pareja, and Sanders on April 30, 2025); 18 (entry of default as to Sanford on May 6, 2025); 21 (motion to set aside entry of default, filed

May 14, 2025). Because there is no evidence that Sanford, Pareja, Bramble, Sanders, or Ford willfully failed to respond, this factor weighs in favor of granting their motion.

Second, Ammann cannot show that he will be prejudiced by setting aside the entry of default. "[M]ere delay does not alone constitute prejudice." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000). Rather, "the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). In his response, Ammann states summarily that the "delay prejudices [his] ability to obtain timely relief." Dkt. 22, at 2. Ammann makes no argument that setting aside the entry of default would lead to a loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. *See id.* Additionally, given Defendants' prompt filing of the motion to set aside the entry of default, this case has not been substantially delayed. *See* Dkt. 21.

On the third factor, Defendants show that they have potentially meritorious defenses. *Effjohn*, 346 F.3d at 563. In determining whether there is a meritorious defense, "the underlying concern is … whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d 359, 373 (5th Cir. 2008) (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008)). A defense is meritorious if "the evidence submitted, if proven at trial, would constitute a complete defense." *Jenkens & Gilchrist*, 542 F.3d at 122 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). In their motion to set aside the entry of default, Sanford, Pareja,

13

Bramble, Sanders, and Ford argue that the Court lacks jurisdiction over them due to improper service of process. Dkt. 21, at 5-6. The Fifth Circuit has held that an objection to improper service constitutes good cause for setting aside an entry of default. *Espinoza v. Humphries*, 44 F.4th 275, 276 (5th Cir. 2022). Lack of personal jurisdiction is also a potentially meritorious defense, and one Defendants raise in their motion to dismiss. *See* Dkt. 20; *McConaghie v. Islamic Republic Broadcasting*, No. EP-13-CV-190-FM, 2014 WL 12580038, at *8 (W.D. Tex. Sept. 19, 2014) (finding that lack of personal jurisdiction was a meritorious defense sufficient to set aside entry of default). As described below, the undersigned finds that both defenses are meritorious in this case.[5] The undersigned concludes that there is good cause to set aside the entry of default.

The undersigned therefore recommends that the District Judge grant Defendants' request to set aside the entry of default, Dkt. 21. The District Judge should deny Ammann's motion for default judgment, Dkt. 19, and the motion to supplement the motion for default judgment, Dkt. 24, as moot.

## IV.    MOTIONS TO DISMISS

If the District Judge adopts the recommendation to set aside the entry of default, the Court may then consider the motions to dismiss. The undersigned evaluates the motions to dismiss below. Dkts. 20; 21.[6]

---

[5] *See infra* Part IV.

[6] Ammann moved for leave to file a sur-reply, arguing that Defendants raised new evidence and arguments in their replies that merit allowing Ammann to file additional briefing. Dkt. 26. Sur-replies are highly disfavored and are permitted only in exceptional or extraordinary circumstances. *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. June 8, 2001). Ammann

**A.    Defendants' motion to dismiss for insufficient service of process should be granted as to eXp World and eXp Realty and denied as to all other defendants.**

In support of their motion to dismiss for insufficient service of process, Defendants allege that Ammann served each of them with summons, but without a copy of the complaint as required by Federal Rule of Civil Procedure 4(c)(1). Dkt. 21, at 5. While Ammann states that "return receipts demonstrate proper service," he provides no evidence that he served each Defendant with a copy of the complaint. *See* Dkts. 22, at 5; 25-2, at 2-4 (attesting that Ammann failed to serve Defendants eXp World, eXp Realty, Sanford, Pareja, Bramble, Sanders, and Ford with a copy of the complaint).[7]

Lack of proper service of process ordinarily prevents a court from exercising jurisdiction over an improperly served defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). A plaintiff must serve the summons and original complaint in accordance with Federal Rule of Civil Procedure 4(e). "The plaintiff is responsible for having the summons and complaint served within the time

---

has not articulated any exceptional or extraordinary circumstances here. Additionally, the Court afforded Ammann a second opportunity to make arguments as to jurisdiction—which appear in Ammann's proposed sur-reply—in supplemental briefing. *See* Dkts. 34; 42. And because Ammann's proposed sur-reply largely "restates the arguments made in [Ammann's] initial response," the undersigned will deny Ammann's motion for leave to file a sur-reply, Dkt. 26. *Lombardi v. Bank of Am.*, No. 3:13-cv-1464-O, 2014 WL 988541, at *3 (N.D. Tex. 2014) ("Leave to file a surreply is unwarranted ... where the proposed surreply merely restates the arguments made in the party's initial response."). Ammann's sur-reply would also seek additional forms of relief, including striking Dkt. 21 and Dkt. 25-2. Pursuant to Section 3(g) of the Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases in the Western District of Texas, Ammann is required to make any such requests for relief by separate motion.

[7] Ammann also moved to strike evidence attached to the motion to dismiss, Dkt. 25-2, as hearsay. Dkt. 27. As explained below, the undersigned denies the motion. *See infra* Part V.

allowed by Rule 4(m)." Fed. R. Civ. P. 4(c). Rule 4(m) provides a defendant must be served within 90 days after the complaint is filed or the court *must* dismiss the action without prejudice or order that service be made within a specified time. *Id.* at 4(m) (emphasis added).

However, a party waives the defense of insufficient service of process if the defense is not raised in the first responsive motion. *See* Fed. R. Civ. P. 12(h)(1); 12(g)(2) ("[A] party that makes a motion under [Rule 12(b)(2)-(5)] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). Defendants Sanford, Pareja, Bramble, Sanders, Ford, and Featherston filed their motion to dismiss for lack of personal jurisdiction, Dkt. 20, one day before filing their motion to dismiss for improper service of process, Dkt. 21. Because the first motion to dismiss did not raise the defense of insufficient service of process, these defendants may not raise that defense in the motion to dismiss for improper service of process, Dkt. 21. *See* Fed. R. Civ. P. 12(h)(1); 12(g)(2). Accordingly, the District Judge should deny the motion to dismiss for insufficient service of process, Dkt. 21, as to Sanford, Pareja, Bramble, Sanders, Ford, and Featherston.[8]

Because Defendants eXp World and eXp Realty did not join the motion to dismiss for lack of personal jurisdiction, Dkt. 20, they did not waive their insufficient-service-of-process defense by raising an earlier Rule 12(b)(2)-(5) defense. Fed. R. Civ.

---

[8] Featherston has still not been served. However, since Featherston filed the motion to dismiss for lack of personal jurisdiction, Dkt. 20, she also waived any defense based on insufficient service of process. *See* Fed. R. Civ. P. 12(h)(1); 12(g)(2).

P. 12(h)(1) (providing that a party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)); 12(g)(2) (stating that except as provided in Rule 12(h)(2) or (3), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"). Nor, as Plaintiff argues, did they waive it by raising successive motions under Rule 12(g)(2). Dkt. 23.[9]

The record indicates that service on Defendants eXp World and eXp Realty was insufficient due to Ammann's failure to include a copy of the complaint with the summons. *See* Dkts. 22, at 5; 25-2, at 2-4. In particular, Defendants attach testimony from Jared Fields, Vice President of Legal Operations for eXp Realty, stating that he viewed the materials sent to both eXp Realty and eXp World and that neither defendant received a copy of the complaint along with the summons. Dkt. 25-2, at 2-3. Accordingly, the undersigned recommends that the District Judge dismiss Ammann's causes of action against eXp World and eXp Realty without prejudice pursuant to Rule 4(m). Fed. R. Civ. P. 4(m).

---

[9] The undersigned accordingly denies Ammann's motion to strike the motion to dismiss for insufficient service of process, Dkt. 21, as to eXp World and eXp Realty for this additional reason. Dkt. 23; *see supra* n.2. Additionally, even if Ammann moved to strike before responding to the motion to dismiss, *see supra* n.2, because each of the other defendants waived their insufficient-service-of-process defense, Ammann's motion to strike, Dkt. 21, would be dismissed as moot as to Sanford, Pareja, Bramble, Sanders, Ford, and Featherston.

**B.    The District Judge should grant the motion to dismiss for lack of personal jurisdiction.**

1.    Legal Standard

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id*. But when, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id*. Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

2.    Discussion

"A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech.*

*Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (internal citations omitted). Because the "Texas long-arm statute has been interpreted as extending to the limits of due process," "the jurisdictional analysis is collapsed into one inquiry as to whether jurisdiction comports with federal due process." *Turner v. Harvard MedTech of Nev., LLC*, 620 F. Supp. 3d 569, 574 (W.D. Tex. 2022). Federal due process requires the satisfaction of two elements before a federal court may properly exercise jurisdiction: "(1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung*, 379 F.3d at 343 (internal citations omitted).

The "minimum contacts" prong is further subdivided into contacts that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Id.* The Court may exercise general jurisdiction over Sanford, Pareja, Bramble, Sanders, Ford, and Featherston (collectively, the "individual defendants") if their "affiliations with [Texas] are so 'continuous and systematic' as to render them essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also id.* The Court may exercise specific jurisdiction over the individual defendants if (1) the individual defendants have minimum contacts with Texas, i.e., if they purposely directed their activities toward Texas or purposefully availed themselves of the privileges of conducting activities there; (2) Ammann's cause of action arises out of or

results[10] from the individual defendants' forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). The specific-jurisdiction inquiry thus "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted).

First, minimum contacts. The individual defendants assert that this Court may not exercise general jurisdiction over them because they lack any connection to Texas, much less continuous and systematic contacts. Dkt. 20, at 5-6. The undersigned agrees. Ammann alleges only summarily that the individual defendants are "subject to personal jurisdiction in this district." Dkt. 1, at 1; *see Stuart*, 772 F.2d at 1192 (stating that "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident"). His complaint alleges no facts demonstrating that any defendant is "essentially at home" in Texas, or even that any defendant besides Featherston has had contact with Texas at all. *See id.* at 2-3 (alleging only that "Sanford, Pareja, … Bramble, Sanders, and Ford operated a low-cost business model that intentionally licensed tens of thousands of agents, including Featherston"). Indeed, in his reply, Ammann asserts only that *specific* personal jurisdiction exists over the defendants. Dkt. 22, at 6. The undersigned finds that this Court may not exercise general personal jurisdiction over the individual defendants.

---

[10] The Fifth Circuit has sometimes framed this inquiry as one into whether the "'lawsuit arises from or relates to the defendant's contact with the forum state.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

The individual defendants also argue that this Court lacks specific jurisdiction over them because they do not have any contacts arising from or related to Ammann's causes of action. Dkt. 20, at 6. In particular, the individual defendants point out that Sanford, Pareja, Bramble, Sanders, and Ford "are all eXp executives or in management positions[] and had no contact with Texas because they played no role in the transaction." *Id.* With respect to Featherston, the individual defendants argue that she had contact with Ammann as his buyer's agent, "but not with Texas." *Id.* They elaborate that Featherston, "from her office in Ohio, engaged in the communications regarding the purchase of real property in Ohio, with an LLC registered in Ohio," and assert that Featherston "was never aware that she was in contact with a Texas resident." *Id.* In response, Ammann asserts that specific personal jurisdiction exists over the individual defendants because they "purposefully directed tortious real-estate activity toward a Texas resident, causing foreseeable injury in Texas." Dkt. 22, at 6. He adds that "executives who operate a nationwide brokerage and injure consumers nationwide are subject to suit wherever their misconduct causes injury; they do not enjoy a 'home-state-only' privilege." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).

The undersigned begins with Featherston. Ammann alleges that he "indicated to Featherston his interest in buying" both Property A and Property B, which suggests that Ammann reached out to Featherston to begin their agent-client relationship. Dkt. 1, at 2-3. Ammann shared a spreadsheet—the "acquisition sheet"—

containing information regarding each of the offers he intended to submit with Featherston. *Id.* at 2; Dkt. 1-3. Ammann then communicated with Featherston's "associate," Courtney, regarding the intended transactions. Dkt. 1, at 2. Specifically, Courtney texted Ammann that no point-of-sale report ("POS") was yet available for Property A, sent Ammann the POS for Property B via text, and informed Ammann that no escrow number was available for Property B via text. Dkts. 1-2, at 2; 1-4, at 2; 1-8, at 1. Almost two weeks after Ammann asked Courtney whether the real estate team "[got] [Property B] under contract," an unidentified number replied that the team had "sent a full list offer" to Ammann's email. Dkt. 1-9, at 2. It is unclear whether the number belonged to Featherston or whether the property subject to the "full list offer" is Property A or Property B. *See id.*; Dkt. 1, at 2-3 (alleging that Ammann sent Featherston texts on the same text thread). On a text chain with Ammann, Courtney and the user of the unknown number exchanged a series of texts where the user asked Courtney to forward the offer to Ammann and responded to Courtney's questions regarding changing the title company involved in the transaction. Dkt. 1-9, at 2. If, in fact, the user is Featherston, Featherston sent Ammann a total of three texts regarding the properties at issue in this case. *See* Dkts. 1-2; 1-4; 1-8; 1-9.

Ammann entered an offer for Property A in the acquisition sheet for Featherston to submit, but Ammann alleges that instead of doing so, Featherston "submitted an offer for a competing buyer." *Id.* Ammann further alleges that Featherston "knowingly misrepresented" via email that a "'team member' had

Property A under contract, when in fact she had submitted an offer for her own buyer." *Id.* at 2-3; Dkt. 1-6. Ammann makes the same allegations with respect to Property B: that Featherston "submitted an offer for a competing buyer" and "knowingly misrepresented that a 'team member' had Property [B][11] under contract." Dkts. 1, at 3; 1-6. According to Ammann, Featherston admitted on a call that "she lied" and had both properties "under contract herself with another buyer." Dkt. 1, at 3. Finally, Ammann alleges that Featherston ultimately purchased Property A for herself. *Id.*

Based on Ammann's allegations, Featherston's contacts with Texas therefore include receiving an invitation to form an agent-client relationship with Ammann, entering into that agent-client relationship, presumably directing her associate to correspond with Ammann regarding Property A and Property B, sending three text messages regarding Properties A and B, sending one email indicating that the properties were under contract with another team member, and making one phone call to Ammann admitting that she "lied" and had the properties under contract herself with other buyers. *See* Dkt. 1. Of course, each of these interactions occurred while Ammann was domiciled in Florida, according to his reply to Defendants' supplemental briefing. *See* Dkt. 45, at 1 (asserting that Ammann was domiciled in Florida when the other, related cases were filed).

_____

[11] In the section of his complaint setting out the facts regarding Property B, Ammann states that "Featherston knowingly misrepresented that a 'team member' had Property *A* under contract." Dkt. 1, at 3 (emphasis added). The undersigned presumes Ammann meant to allege that Featherston knowingly misrepresented that a team member had Property B under contract.

The undersigned finds that Ammann has not pleaded a prima facie case of personal jurisdiction. *See Walk Haydel*, 517 F.3d at 241. In his reply to the motion to dismiss, Ammann argues that specific jurisdiction exists because "Defendants purposefully directed tortious real-estate activity toward a Texas resident, causing foreseeable injury in Texas." Dkt. 22, at 6.

First, to the extent Ammann argues personal jurisdiction arises from the contractual relationship between Ammann and Featherston, it is well-established that "'merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.'" *Freudensprung*, 379 F.3d at 344 (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). The existence of a contract between the nonresident defendant and a resident of the forum, combined with communications related to the execution and performance of the contract, is insufficient to establish the minimum contacts necessary to support specific personal jurisdiction. *Id.* (citing *Holt*, 801 F.2d at 778). In *Holt*, the Fifth Circuit held that it lacked specific personal jurisdiction over a nonresident defendant where that defendant entered into a contract with a Texas resident to drill for oil and gas in Oklahoma, sent an agreement and checks to Texas, and engaged in extensive communication with the Texas plaintiff over the phone and in writing. *Holt*, 801 F.2d at 708; *see also Freudensprung*, 379 F.3d at 344 (summarizing the holding in *Holt*).

Similarly, in *Stuart*, the Fifth Circuit held that there was no personal jurisdiction over a nonresident defendant who contracted with multiple Texas residents, sent letters and made calls to Texas, shipped products to Texas, negotiated

24

a contract with plaintiffs to be governed by Texas law, and marketed a product in Texas. *Stuart*, 772 F.2d at 1192-94; *see also Freudensprung*, 379 F.3d at 344 (summarizing the holding in *Stuart*). The same principles apply with respect to contractual relationships, such as attorney-client relationships, with more formalized obligations. *See Linton v. Johnson*, No. 5-10-cv-00585 OG (NN), 2011 WL 1743677, at *4 (W.D. Tex. May 5, 2011), *report and recommendation adopted*, 2011 WL 13272450 (W.D. Tex. May 31, 2011) (citing *Trinity Indus. v. Myers & Assocs.*, 41 F.3d 229, 230 (5th Cir. 1995) ("Neither the mere existence of an attorney/client relationship between a resident client and an out-of-state attorney, nor the routine correspondence and interactions attendant to that relationship, are sufficient to confer personal jurisdiction.").

Featherston's connections to Texas in this case are similar to the deficient connections from *Holt* and *Stuart*. *See Holt*, 801 F.2d at 708; *Stuart*, 772 F.2d at 1192-94. Featherston entered into a contract with Ammann, who states he is currently a Texas resident, to help him purchase properties located in Ohio. Dkt. 1, at 2-3. She then communicated with Ammann—who was purportedly domiciled in Florida at the time—regarding the performance of that contract. Dkts. 1, at 2-3; 1-2, at 2; 1-4, at 2; 1-8, at 1; 1-9, at 2; 45, at 1. Because these contacts, taken together, constitute nothing more than "merely contracting" with a person who relocated to Texas after the contract was presumably terminated, the undersigned finds that the Court cannot exercise personal jurisdiction over Featherston on the basis of any contract between Ammann and Featherston. *See Freudensprung*, 379 F.3d at 344.

25

The undersigned also finds that the contacts Ammann identifies are insufficient to support specific personal jurisdiction over Featherston. Featherston's minimal phone and email communications relating to the purchase of the Ohio properties do not demonstrate any purposeful contact with Texas on Featherston's part. *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (holding that email communications targeted at a Texas contract concerning work to be performed in Texas were "legally insufficient" to support a finding of specific jurisdiction). Rather, the fact that Ammann was domiciled in Texas at the time this suit was filed is merely fortuitous—especially in light of Ammann's representations that he was located in Florida at the time he filed the related Florida case and received Featherston's communications. *See* Dkts. 39-5, at 3; 45, at 1.

The fact that Ammann brings an intentional-tort claim for breach of fiduciary duty does not change the analysis. Dkt. 1, at 3; *see* Dkt. 22, at 6 (alleging that specific jurisdiction exists because "Defendants purposefully directed tortious real-estate activity toward a Texas resident"). It is true that a "single intentional or fraudulent act by a nonresident defendant directed toward Texas that gives rise to a plaintiff's cause of action can support a finding of minimum contacts." *XPEL Techs. Corp. v. Md. Performance Works Ltd.*, No. SA-05-CA-0593-XR, 2006 WL 1851703, at *10 (W.D. Tex. May 19, 2006) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999)). However, the Fifth Circuit has emphasized that even in the context of an intentional tort, "mere injury to a forum resident is not a sufficient connection to the forum." *Sangha*, 882 F.3d at 103 (citing *Walden*, 571 U.S. at 290 (2014)). "The proper

question is not whether [the plaintiff] experienced an injury or effect in a particular location, but whether [a defendant's] conduct connects it to the forum in a meaningful way." *Id.* at 103-04; *see also Walden*, 571 U.S. at 284 (stating that the specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation").

Ammann's alleged presence in Texas is a consequence of his own relationship with Texas, and not of any actions Featherston took to establish contacts with Texas. *See Sangha*, 882 F.3d at 104. Indeed, Ammann supplies no facts suggesting that Featherston knew he resided in Texas, offering only the conclusory assertion that "Defendants purposefully directed tortious real-estate activity toward a Texas resident." *See* Dkts. 1; 22, at 6. Additionally, Ammann stated in his amended Florida complaint that he was domiciled in Florida "at the time the action was filed and during the events giving rise to the claims" in that case, which are related to the claims in this suit. Dkt. 39-5, at 3; *see also* Dkt. 45, at 1. If true, as Ammann represented to the Florida court and this one, Featherston would have no basis on which she could expect to be haled into court in Texas. Dkt. 39-5, at 3; *see also* Dkt. 45, at 1. In fact, as in *Walden*, Ammann's allegations show that Featherston "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Texas. *See* Dkt. 1; *see also Walden*, 571 U.S. at 289.

Ammann's case is distinguishable from *Trois v. Apple Tree Auction Center, Inc.*, in which the Fifth Circuit held that there was personal jurisdiction over a defendant who participated in—but did not initiate—conference calls with a plaintiff whom

defendant knew resided in Texas. 882 F.3d 485, at 487-88 (5th Cir. 2018). In *Trois*, the plaintiff alleged fraud based on misrepresentation. *Id.* at 488. Noting that the case fell "within the fuzzy boundaries in the middle of the spectrum," the Fifth Circuit nonetheless found that the defendant "should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations." *Id.* at 491. In contrast, as discussed above, Ammann's presence in Texas is a consequence of his relationship with Texas, not of any actions Featherston took to establish contacts with the forum. *See Sangha*, 882 F.3d at 103-04. Ammann's complaint suggests that he reached out to Featherston to establish their business relationship. *See* Dkt. 1, at 2-3. That relationship consisted of a series of communications relating to properties in Ohio. *See id.* Ammann makes no allegations that Featherston knew Ammann lived in Texas—in fact, his representations suggest that, if she knew anything about Ammann's location, Featherston likely believed she communicated with a Florida citizen. *See* Dkts. 1; 22, at 6; 39-5, at 3; 45, at 1. Therefore, Featherston's relationship with Texas is merely fortuitous. *See Sangha*, 882 F.3d at 103.

Ammann suggests that this Court may exercise personal jurisdiction over each of the other individual defendants—all managers and executives of Featherston's employer company and its parent company—by virtue of their relationship with Featherston. Specifically, Ammann alleges that the remaining defendants "operated a low-cost business model that intentionally licensed tens of thousands of agents, including Featherston, with minimal to no supervision or training." Dkt. 1, at 3; *see*

*also* Dkt. 22, at 6 (arguing that Defendants purposefully directed tortious conduct toward a Texas resident). True, a defendant "may be subject to personal jurisdiction because of the activities of its agent within the forum state[.]" *Trois*, 882 F.3d at 490. But to the extent Ammann asserts personal jurisdiction based on an agency relationship between Featherston and these defendants, because Featherston lacks sufficient contacts to support the Court's personal jurisdiction over her, any principal of Featherston's also lacks sufficient contacts. *See id.*

Finally, to the extent Ammann asserts that the Court may independently exercise personal jurisdiction—either general or specific—over any of the other individual defendants, Ammann alleges no facts showing that any of those defendants has had any contact with Texas apart from his or her relationship with Featherston. *See* Dkts. 1; 22. The connection between the other individual defendants and Featherston, in turn, is loose at best given that those defendants are high-level managers and executives and Featherston is a local agent. *See* Dkt. 1, at 3-4 (alleging that the individual defendants "operated a low-cost business model that ... licensed ... Featherston" and "contributed to [Featherston's] breach by failing to supervise," "correct," or "oversee" Featherston). The undersigned concludes that Ammann has not alleged sufficient minimum contacts to establish a prima facie case of personal jurisdiction as to any of the individual defendants. *See Walk Haydel*, 517 F.3d at 241.

Since Ammann has not alleged sufficient minimum contacts, the undersigned does not reach the question whether subjecting the nonresident defendants to jurisdiction is consistent with traditional notions of fair play and substantial

justice. *See Freudensprung*, 379 F.3d at 343. Because no individual defendant's contacts with Texas are sufficient to confer personal jurisdiction, the undersigned recommends that the District Judge grant the individual defendants' motion to dismiss, Dkt. 20.

## V.    MOTIONS TO STRIKE

Ammann moves to strike the Declaration of Jared Fields, submitted with Defendants' reply in support of their motion to dismiss. Dkt. 27. In the declaration, Fields attests that no defendant received a copy of the summons along with the complaint at the time of service. *See* Dkt. 25-2. Ammann states that the declaration should be stricken because Fields lacks personal knowledge pursuant to Federal Rule of Evidence 602 and that Fields's "statements about what each package 'contained'" are hearsay under Federal Rule of Evidence 802. Dkt. 27, at 1.

First, Rule 602 provides that a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Rule further states that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." *Id.* In the declaration, Fields asserted that he "ha[d] personal knowledge" as to the facts in the declaration "as to both eXp Realty, LLC and eXp World Holdings, Inc." Dkt. 25-2, at 2. He further stated that he "personally reviewed the contents" of packages sent to eXp World, eXp Realty, Pareja, Bramble, Sanders, Ford, and Sanford. Dkt. 25-2, at 2-4. Given that Fields personally reviewed the contents of each of the packages, the

undersigned finds that this evidence is sufficient to show Fields's personal knowledge as to service on each of these defendants pursuant to Federal Rule of Evidence 602.

The undersigned also finds that the statements in Fields's declaration are not inadmissible hearsay. Under Federal Rule of Evidence 801, "hearsay" is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Because Fields's statements regarding the contents of each package are his own and made as testimony for the current proceeding, they are definitionally not hearsay. *See* Dkt. 25-2; *id.* The undersigned will therefore deny Ammann's motion to strike the Declaration of Jared Fields, Dkt. 27.

Ammann also moves to strike Defendants' response to his motion for leave to file a sur-reply as untimely. Dkt. 32, at 1. Ammann filed his motion for leave to file a sur-reply, Dkt. 26, on May 26, 2025. Defendants filed their response on June 10, 2025, eight days after it was due. Dkt. 31. "Although the Court may strike an untimely-filed pleading or submission, the Court is not required to do so." *Ledet v. Perry Homes, LLC*, No. 5:19-cv-712-OLG, 2020 WL 10352340, at *1 (W.D. Tex. Jan. 6, 2020). While it is apparent that Defendants missed their deadline, Ammann suffered no prejudice as a result. The undersigned will therefore deny the motion to strike, Dkt. 32.

## VI.    MOTION FOR SANCTIONS

Finally, Ammann asks the Court to impose sanctions against Defendants' counsel pursuant to 28 U.S.C. § 1927. Dkt. 28. Ammann bases his motion on the following grounds: that counsel (1) filed the motion to dismiss, Dkt. 20, "after clerk's

defaults without first moving under Rule 55(c)"; (2) filed the allegedly "duplicative" motion to dismiss, Dkt. 21, without leave of court and "tack[ed] on an untimely Rule 55(c) request"; (3) made a "[k]nowingly false representation that service packets contained only summonses"; (4) made a "[d]efamatory accusation that Plaintiff filed suit to 'extort' Defendants"; (5) "intentionally misstat[ed] the facts and tr[ied] to say the properties were unavailable when they were available"; (6) improperly refused to withdraw the "duplicative" motion to dismiss, Dkt. 21; and (7) improperly filed the Declaration of Jared Fields, Dkt. 25-2, which Ammann alleges contains hearsay, is not based on personal knowledge, and was "created after the fact." Dkt. 28, at 1-2. Ammann adds that counsel violated Federal Rule of Civil Procedure 11(b)(3) by accusing Ammann of "extorting" Defendants. *Id.* at 2.

Section 1927 provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[P]unishment under § 1927 is sparingly applied." *Lawyers Title Ins. Corp. v. Doubletree Partners, LP*, 739 F.3d 848, 872 (5th Cir. 2014) (internal quotation marks omitted). Sanctions under section 1927 are "punitive in nature and require clear and convincing evidence that sanctions are justified." *Id.* (internal quotation marks omitted). They should be imposed "only in instances evidencing a serious and standard disregard for the orderly process of justice." *Id.* (internal quotation marks omitted).

There is no clear and convincing evidence that sanctions under section 1927 are justified in this case. *See id.* While Defendants' counsel has made procedural missteps, including failing to respond to certain of Ammann's motions in a timely manner—or at all—the record demonstrates no serious disregard on counsel's part for the orderly process of justice. *See id.* Indeed, the volume of Ammann's own filings likely made it more difficult for Defendants to timely respond. Ammann offers no evidence that counsel unreasonably or vexatiously multiplied the proceedings, and the undersigned finds none. This is not the rare case in which section 1927 sanctions are appropriate.

Next, Rule 11(b)(3) states that by presenting a pleading, an attorney "certifies that … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). "Rule 11 sanctions are an extraordinary remedy to be exercised with extreme caution." *MatrixCare Holdings, Inc. v. Jakubowicz*, No. 6:19-cv-00003-ADA-JCM, 2019 WL 2453690, at *4 (W.D. Tex. Apr. 22, 2019), *R. & R. adopted*, 2019 WL 2453691 (W.D. Tex. May 8, 2019). In determining whether to impose Rule 11 sanctions, courts should consider:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect is had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*GrasshoppHer, Inc. v. Curtis*, No. 1:24-cv-382-DII, 2024 WL 5036611, at *5 (W.D. Tex. July 22, 2024) (citing the Advisory Committee's notes to the 1993 amendments).

The undersigned finds that Defendants' extortion accusation does not rise to the level of sanctionable conduct under Rule 11. The statement was obviously made willfully, and Defendants stated in their response to the motion for sanctions that they "stand by" the statement. Dkt. 37, at 12. But the fact that Ammann disagrees with the accusation does not make it grounds for sanctions. Defendants are free to make their arguments as to Ammann's motives, and indeed they presented evidence that they believe demonstrates that the suit *has* been brought to extort them. *See* Dkts. 39-5, 39-6; *see also* Dkts. 20, at 2; 37, at 12. Ammann's discomfort with the contents of the statement does not mean Defendants made the statement without evidentiary support—whether or not Ammann believes the evidence. *See* Fed. R. Civ. P. 11(b)(3). Additionally, the undersigned finds that the statement did not prejudice Ammann or have any effect on the pleadings or the litigation of this case. The undersigned will therefore recommend that the District Judge deny the motion for sanctions, Dkt. 28.

## VII.    ORDER AND RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **ORDERS** that Ammann's motion to strike, Dkt. 23, is **DENIED**. The undersigned additionally **ORDERS** that Ammann's motion to file a sur-reply, Dkt. 26, is **DENIED**.

The undersigned **FURTHER ORDERS** that Ammann's motion to strike the Declaration of Jared Fields, Dkt. 27, is **DENIED**. Ammann's motion to strike Defendants' untimely response to motion for leave, Dkt. 32, is also **DENIED**.

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants Sanford, Pareja, Bramble, Sanders, Ford, and Featherston's motion to dismiss for lack of personal jurisdiction, Dkt. 20.

The undersigned **FURTHER RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Defendants eXp World, eXp Realty, Sanford, Pareja, Bramble, Sanders, Ford, and Featherston's motion to dismiss and motion to set aside default, Dkt. 21. The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' request to set aside the entry of default, Dkt. 21, as to all Defendants. The undersigned **RECOMMENDS** that the District Judge **GRANT** the motion to dismiss for insufficient service of process, Dkt. 21, as to eXp World and eXp Realty and **DENY** the motion to dismiss for insufficient service of process, Dkt. 21, as to all other defendants. The undersigned **RECOMMENDS** that the District Judge **DENY** Ammann's motion for default judgment, Dkt. 19, and the motion to supplement the motion for default judgment, Dkt. 24, as **MOOT**.

Finally, the undersigned **RECOMMENDS** that the District Judge **DENY** Ammann's motion for sanctions, Dkt. 28.

The referral of this case to the Magistrate Judge should now be canceled.

## VIII.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 15, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE